IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | 8:06CR257 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | MEMORANDUM AND ORDER |
| BRANDON J. WATSON, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on defendant Brandon J. Watson's ("Watson") objection, Filing No. 36, to the magistrate judge's report and recommendation ("R&R"), Filing No. 33. This case concerns charges that Watson, an alleged unlawful user of marijuana, knowingly possessed firearms which had been shipped and transported in interstate commerce, and knowingly and intentionally possessed with intent to distribute Methylenedioxymethamphetamine. Filing No. 1. Watson filed an amended motion to suppress evidence and statements related to the charges against him, Filing No. 18, and the magistrate judge recommends denial of Watson's motion to suppress. Filing No. 33.

Pursuant to 28 U.S.C. § 636(b)(1)(A), the court has conducted a *de novo* determination of those portions of the R&R to which Watson objects. *United States v. Uscanga-Ramirez*, 475 F.3d 1024 (8th Cir. 2007); *United States v. Lothridge*, 324 F. 3d 599, 600-01 (8th Cir. 2003). The court has reviewed the entire record including the transcript of the suppression hearing, Filing No. 24, the briefs, and the relevant law. The court accepts the facts set out in the R&R and they need not be repeated here, except to the extent necessary to support the court's findings.

**Background**

In early 2006, Officer Debbie Cass ("Cass") of the Omaha Police Department heard a police broadcast involving a red Chevy Tahoe driven by Watson. The broadcast provided the vehicle's plate numbers and informed police officers that someone in the red Chevy Tahoe pointed an AK-47 at the person who reported the incident. On the date of that broadcast, Cass observed the red Chevy Tahoe while the vehicle was parked. Several months later, on June 16, 2006, Cass remembered the earlier broadcast when she witnessed a red Chevy Tahoe run the stop sign at Oregon Trail and Myrtle while she was parked at a stop sign at the intersection of Nicholas Street and Oregon Trail. Cass waited for the vehicle to drive in front of her and then she ran the plate number.[1] On this date, Cass was driving a police cruiser equipped with a digital camera that she believed was operational.

Cass pulled over Watson and approached his vehicle. Watson stuck his hands out the window and when Cass asked "How are you doing, Brandon?," Watson advised Cass that he had a handgun on the dash in plain view with the clip removed. Cass placed Watson under arrest for illegal transportation of a weapon. As Cass removed Watson from his vehicle and patted him down for weapons prior to putting him in Cass's cruiser, Cass smelled fresh marijuana. Officer Paul Antoniak arrived at the scene and searched Watson incident to arrest while Cass searched Watson's vehicle. In Watson's vehicle, Cass found

---

[1]Tamika Smith ("Smith"), Watson's cousin and a passenger in Watson's vehicle on the day he was arrested, stated at the suppression hearing that while she was driving with Watson on Myrtle, they passed a police cruiser driven by a female officer driving in the opposite direction. Smith also testified that she did not notice any marijuana smell in Watson's vehicle or anything suspicious. Smith further stated that she and Watson approached the intersection at Myrtle and Oregon Trail, and that Watson stopped or slowly moved forward to look for traffic past a bush on one corner and a tree on the other. According to Smith, neither she nor Watson gave the officers permission to search Watson's vehicle.

2

three gallon-sized Ziploc bags of marijuana on the back floor board behind the driver's seat.  Two of the bags were inside of a plastic sack, and one had slid out and was in the middle of the floorboard.  In a little tray in the console of the vehicle, Cass found four small baggies of marijuana and small green and pink pills she believed were ecstasy.

Tamika Smith ("Smith"), Watson's cousin and a passenger in Watson's vehicle on the day he was arrested, stated at the suppression hearing that while she was driving with Watson on Myrtle, they passed a police cruiser driven by a female officer driving in the opposite direction.  Smith also testified that she did not notice any marijuana smell in Watson's vehicle or anything suspicious.  Smith further stated that she and Watson approached the intersection at Myrtle and Oregon Trail, and that Watson stopped or slowly moved forward to look for traffic past a bush on one corner and a tree on the other.  According to Smith, neither she nor Watson gave the officers permission to search Watson's vehicle.

Officer Gary Kula ("Kula") of the narcotics unit arrived at the scene and told Watson he was a police officer, advised Watson of his *Miranda* rights, and asked Watson if he would speak with him.  Watson agreed to speak and Kula interviewed Watson for approximately half an hour. During the interview, Kula told Watson that he was interested in knowing what happened to the AK-47 and asked Watson if he had that weapon at his residence.  Watson told Kula he acquired the weapon at a pawn shop and that he legally possessed it.  Kula asked Watson if he could go to Watson's residence to obtain the weapon and any drug contraband.  Watson was cooperative and gave permission, but he was concerned because his residence belonged to his aunt and uncle and he wanted his uncle, Marcus Chandler ("Chandler"), to grant the officers permission to enter their home.

Kula completed a permission-to-search form and presented it to Watson who signed the form after Kula advised him of the form's content and the officer's request to search.

Kula and uniform officers met narcotics officers at Watson's residence, 3344 Manderson Street, where they met Chandler. Chandler indicated that he knew where the firearm was, and after Kula advised him of the contents of the permission-to-search form, Chandler signed the form, and the officers entered his residence. Cass maintained a law enforcement presence outside the home during the search. Chandler directed the officers to a back bedroom where the officers found the weapon and the officers obtained other evidence from the bedroom and from the front living room.

Cass did not take any actions to preserve the recording of Watson's stop because only sergeants or higher ranked officers are able to retrieve and download digital recordings from the police cruisers. Also, Cass explained, Cass did not believe there was anything significant about the stop that warranted preserving the recording because the stop did not involve a fight, assault, or struggle.

**Discussion**

In his amended motion to suppress, Watson argues his detention during a warrantless search of his vehicle on June 16, 2006, violated Watson's Fourth Amendment rights against illegal search and seizure. Watson maintains that Cass stopped his vehicle without reasonable suspicion of criminal activity or probable cause of a traffic infraction, and then unlawfully searched his vehicle. Further, Watson maintains that following his detention and arrest, Watson made statements to the police officers who stopped him and

4

did not advise him of his *Miranda*[2] rights. Watson argues his statements to the officers should be suppressed as they were unlawfully obtained, not voluntary, and fruits of the initial illegal detention and search. Watson asserts that as a result of his detention and search of his person and vehicle, government agents allegedly received permission to search Watson's residence where agents found a scale, 9mm and SKS magazines, and a 7.62 mm Rifle in Watson's closet. According to Watson, all evidence derived from the unlawful searches should be suppressed as fruit of the poisonous tree. *Wong Sun v. United States*, 371 U.S. 471 (1963). Finally, Watson contends that the failure of law enforcement to preserve video of his stop, detention, and interrogation, a recording which contains exculpatory evidence, constituted bad faith and violated Watson's due process rights.

The magistrate found Cass's testimony to be credible, and that witnessing Watson's vehicle proceed through a stop sign without stopping constituted an objectively reasonable basis upon which Cass believed a traffic offense had occurred. The magistrate further found that under the automobile exception to the warrant requirement, Cass conducted a lawful search of Watson's vehicle because it was illegal for Watson to transport a gun with a loaded magazine in his vehicle, and Cass smelled marijuana when she removed Watson from his vehicle. Accordingly, the magistrate determined Cass had sufficient probable cause to believe that Watson's vehicle contained evidence of criminal activity.

The magistrate concluded that Watson's statements to Cass that he had a handgun on the dash in plain view with the clip removed did not constitute a statement made as the

---

[2]*Miranda v. Ariz.*, 384 U.S. 436, 452 (1966).

5

result of an interrogation or occur from words Cass knew or was likely to know that would likely elicit an incriminating response. Additionally, the magistrate found Kula's testimony credible that Kula advised Watson of his *Miranda* rights. The magistrate determined Watson made statements to Kula voluntarily as no evidence existed to suggest that Watson did not understand his *Miranda* rights, nor was there evidence of coercion or police misconduct. Under a totality of the circumstances analysis, the magistrate concluded that both Watson and his uncle, Chandler, voluntarily consented to search of the residence by signing the permission-to-search form. Finally, the magistrate found that law enforcement did not act in bad faith by failing to preserve Watson's videotape, and therefore, no due process violation occurred.

Watson objects to the magistrates "total acceptance" of Cass's testimony as fact, rather than giving weight to Smith's account of Watson's stop and interrogation. Watson argues that Cass offers conflicting statements of where she was parked and where she first observed Watson's vehicle. Having reviewed the suppression hearing transcript, the court notes the confusion or difficulty in describing the angular intersection where Cass and Watson were located, as well as the direction each person was faced and traveling. However, the court agrees with the magistrate judge's finding that Cass had sufficient probable cause for believing that a traffic violation had occurred. Additionally, as the magistrate noted, even if Cass was mistaken that Watson ran through a stop sign, so long as the mistake was objectively reasonable, the stop does not violate the Fourth Amendment. *United States v. Herrera-Gonzalez*, 474 F.3d 1105, 1109 (8th Cir. 2007). The court finds that Cass's basis for reasonable suspicion is further strengthened by her recollection of a previous broadcast involving illegal activity and Cass's vehicle earlier in

6

the year.  As such, the court finds that Cass's stop of Watson's vehicle was valid because she had reasonable suspicion of a particularized and objective basis to believe a traffic violation had occurred.  *Herrera-Gonzalez*, 474 F.3d at 1109; *United States v. Gonzales*, 220 F.3d 922, 925 (8th Cir. 2000).

Watson told Cass he had a handgun on the dash in plain view with the clip removed, and Cass smelled marijuana while removing Watson from his vehicle, thereby creating probable cause warranting a search of Watson's vehicle incident to arrest.  The odor of an illegal drug, like marijuana, can be highly probative in establishing probable cause for a search.  *United States v. Gerard*, 362 F.3d 484, 489 (8th Cir. 2004).  Watson argues that Cass never asked Watson about drugs, and Watson did not grant Cass permission to search his vehicle.  The court finds this was not necessary because the "automobile exception" operates as an exception to the warrant requirement and permits officers to search a vehicle if the officers believe the vehicle contains evidence of criminal activity.  *United States v. Hill*, 386 F.3d 855, 858 (8th Cir. 2004).  Thus, the court remains in agreement with the magistrate that Cass had sufficient probable cause for removing Watson from his vehicle and arresting him for illegal transportation of a weapon.  Further, the court finds that evidence found in Watson's vehicle and any fruits derived from the search were lawfully obtained and will not be suppressed.

Watson argues that he made statements to Kula solely because Cass pulled him over, and therefore, no independent basis exists for Watson's admissions or consent to search his residence.  The court finds this argument is without merit. Consent is a valid exception to the warrant requirement, and consent is free and voluntary when, in light of the totality of the circumstances, consent was given without coercion, express or implied.

*United States v. Sanders*, 424 F.3d 768, 773 (8th Cir. 2005). The court agrees with the magistrate's determination that Kula advised Watson of his *Miranda* rights and that Watson freely and voluntarily consented to the search of his residence, as evidenced by Watson signing the permission-to-search form. In addition, Kula obtained consent from Watson's uncle, Chandler, who also signed the form. Furthermore, the court finds there is nothing to suggest the officers coerced Watson into giving consent, or that the officers acted in a threatening or intimidating manner. Thus, under the totality of the circumstances, the court concludes that Watson's statements to Kula and Watson's consent to search his residence were voluntarily given, and the evidence obtained therefrom should not be suppressed.

Lastly, Watson argues that law enforcement's failure to preserve his video violates the government's duty to preserve evidence, and any evidence that audio or video would have recorded, whether corroborating or not, should be excluded by the court. Watson agues that Cass's free will to decide what was worthy of preservation indicates a general lack of standard operating procedure. The court agrees with the magistrate's findings that in this case, Cass's inaction in preserving the recording of Watson's stop and interrogation did not constitute bad faith sufficient to warrant a denial of due process. *United States v. Malbrough*, 922 F.2d 458, 463 (8th Cir. 1990). As Cass testified, no fights or assaults occurred during Watson's stop, and no evidence exists that the recording would have provided evidence of exculpatory value. Accordingly, the court finds that law enforcement's failure to preserve Watson's recording is not violative of Watson's due process rights.

The court denies Watson's request to suppress the evidence from his stop, interrogation, and search of his vehicle and residence as such evidence is not fruit of the

8

poisonous tree. After consideration of all the issues and evidence in this case, the court adopts and incorporates herein the magistrate's R&R. Whether the government can prove that the charges against Watson remain questions for determination at trial.

THEREFORE, IT IS ORDERED THAT

1. Defendant's amended motion to suppress, Filing No. 18, is denied;

2. Defendant's objections to the magistrate's report and recommendation, Filing No. 36, are overruled; and

3. The magistrate's report and recommendation, Filing No. 33, is adopted in its entirety.

DATED this 17th day of April, 2007.

BY THE COURT:


s/ Joseph F. Bataillon
Chief United States District Judge